UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| (1) APPROVED SCIENCE, LLC,<br>a Wyoming Limited Liability Company<br><br>and<br><br>(2) IDINGO, LLC<br>an Illinois Limited Liability Company<br><br>    Plaintiffs,<br><br> v.<br><br>(1) PELICAN VITAMINS, LLC, a<br>New York Limited Liability Company,<br>(2) PHARMAGETICS, LLC,<br>a Nevada Limited Liability Company,<br>(3) ROMEO HEALTH, LLC, a<br>New Jersey Limited Liability Company,<br>(4) DIMITRI CALDARELLI, an individual,<br>(5) JOHN PELLICANO, an individual,<br>(6) PORFIRIA SCANNELLA, a/k/a<br>PORFIRIA CALDARELLI, an individual,<br>(7) JOSEPH SCANNELLA, an individual,<br>(8) GIAN SCANNELLA, an individual, and<br>(9) DOES 1 to 10, inclusive,<br><br>    Defendants. | Case No. _____<br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

COME NOW plaintiffs Approved Science, LLC and Idingo, LLC, and for their causes of action, hereby state:

The Parties

1. Plaintiffs Approved Science, LLC (hereinafter "Approved Science), a Wyoming Limited Liability Company, and Idingo, LLC (hereinafter "Idingo" and collectively "Plaintiffs"), an Illinois Limited Liability Company, with their principal places of business in Florida, have a presence and do business in the state of Missouri.

2. Upon information and belief, defendant Pelican Vitamins, LLC (hereinafter "Pelican Vitamins" or "Defendant Pelican Vitamins") is a New York limited liability company with its principal place of business in New York, and which does business in the state of Missouri and throughout the United States.

3. Upon information and belief, defendant Pharmagetics, LLC (hereinafter "Pharmagetics" or "Defendant Pharmagetics") is a New York limited liability company with its principal place of business in New York, and which does business in the state of Missouri and throughout the United States.

4. Upon information and belief, defendant Romeo Health, LLC (hereinafter "Romeo Health" or "Defendant Romeo Health") is a New Jersey limited liability company with its principal place of business in New Jersey, and which does business in the state of Missouri and throughout the United States.

5. Upon information and belief, defendant Dimitri Caldarelli is an individual residing in New York, and is a manager and owner of defendants Pharmagetics and Romeo Health.

6. Upon information and belief, defendant John Pellicano is an individual residing in New York with the same residential address as the principal place of business of Pelican Vitamins, LLC, and is a manager and owner of defendant Pelican Vitamins,

LLC.

7. Upon information and belief, defendant Porfiria Scannella is an individual residing in New Jersey, and is a manager and owner of defendants Pharmagetics and Romeo Health

8. Upon information and belief, defendant Joseph Scannella is an individual residing in New Jersey, and is a manager and owner of defendants Pharmagetics and Romeo Health.

9. Upon information and belief, defendant Gian Scannella is an individual residing in New Jersey, and is a manager and owner of defendants Pharmagetics and Romeo Health.

10. Plaintiffs are currently unaware of the identities of defendants DOES 1 to 10, and therefore sue defendants by such pseudonyms.  Upon information and belief, discovery will reveal the true identities of those defendants, and plaintiffs will then amend this Complaint to identify those defendants by name.  Upon information and belief, defendants DOES 1 to 10 are individuals or entities affiliated with defendants, or have control and responsibility for the marketing, advertising, promotion, and sale of defendants' products.

11. Upon information and belief, there now exists, and at all relevant times herein there existed, a unity of interest or ownership between and among defendants, such that any individuality and separateness between and among them has ceased to exist, and defendants, and each of them, are the alter egos of each other.  Upon information and belief, at all material times herein, each defendant was the agent,

employee, partner, or representative of every other defendant.  Upon information and belief, each defendant named herein committed acts and omissions leading to plaintiffs' damages, were acting in concert and active participation with each other in committing the wrongful acts alleged herein, and *continue to do so*, and in so doing acted and continue to act within the scope and course of their agency with every other named defendant and each of them authorized, directed, accepted, ratified and approved of such actions.

## Jurisdiction and Venue

12. This is an action for violations of the Lanham Act, as well as various acts of unfair competition, false advertising, trademark infringement, trade libel, cybersquatting, and tortious interference with business relationships/expectancies.  This Court has subject matter (federal question) jurisdiction over plaintiff's claims for Lanham Act violations pursuant to 15 U.S.C.§§1114,1121, & 1125, and 28 U.S.C.§§ 1331and 1338.

13. This Court has supplemental jurisdiction over plaintiffs' claims arising under the laws of the state of Missouri pursuant to 28 U.S.C. § 1367(a) because these claims are so related to plaintiffs' claims under federal law that they form a part of the same case or controversy and derive from a common nucleus of operative facts.

14. This Court has personal jurisdiction over each of the defendants because each defendant has had continuous, systematic, and substantial contacts with the state of Missouri, including doing business in Missouri and expressly aiming their infringing and unlawful conduct at Missouri consumers.  Defendants have committed intentional acts expressly aimed at the state of Missouri, and have caused harm that defendants know is

likely to be suffered in the state of Missouri. Further, the unlawful acts described in this Complaint were committed by defendants in this District, and have caused harm in this District, and defendants, or their agents operating within the scope and course of their agency with defendants, operate the offending websites which are viewable by citizens of this District.

15. Venue is proper in this judicial district pursuant to 28 U.S.C.§1391, in that, among other things, a substantial portion of the events giving rise to this action – including but not limited to defendants selling their products and publishing advertising materials — occurred within this District.

## General Allegations

16. Plaintiff Approved Science is the owner of the valid and subsisting common-law trademarks Bloodsyl, Hairprin, Anemiaprin, Fertilisyl, Bonesyl, Energysyl, Eyesyl, Hemovir, Liversyl, Prostarex, Caralluma MD, and Tinnitol (hereinafter, collectively, the marks").  Plaintiff Approved Science has actively used the marks in commerce throughout the United States in connection with these dietary supplements which are used in the promotion of mental and physical health; and as a result of their extensive promotional activities, and their investment of substantial time, money, and effort, plaintiff Approved Science has created substantial goodwill in the marks and consumers associate the marks with the high quality supplement products (hereinafter, collectively, "the products") which originate from plaintiff Approved Science; and Approved Science markets and sells the products almost exclusively on the internet and as such, has a compelling need to maintain an online presence that allows them to effectively

disseminate accurate and truthful information about the products to consumers.

17. Plaintiff Idingo is the owner of the valid and subsisting common-law trademark Brainol. Plaintiff Idingo has actively used this mark in commerce throughout the United States in connection with this dietary supplement which is used in the promotion of mental and physical health; and as a result of its extensive promotional activities, and its investment of substantial time, money, and effort, plaintiff Idingo has created substantial goodwill in the Brainol mark and consumers associate the mark with the high quality supplement product (hereinafter, collectively, "the products") which originates from plaintiff Idingo; and Idingo markets and sells the product almost exclusively on the internet and as such, has a compelling need to maintain an online presence that allows it to effectively disseminate accurate and truthful information about the product to consumers.

18. Upon information and belief, defendants own and operate certain websites that sell products and otherwise sell products through several commercial third-party e-commerce websites (the "Websites"), which are set forth and incorporated by reference herein, attached hereto, and labeled "Plaintiffs' Exhibit 1."

19. The Websites have and are selling products with the protected trademark names of Brainol, Bloodsyl, Hairprin, Anemiaprin, Fertilisyl, Bonesyl, Energysyl, Eyesyl, Hemovir, Liversyl, Prostarex, Caralluma MD, and Tinnitol printed directly on the product label attached to the container, and also have printed on the container label and product image their own brand names, including but not limited to "Dr. Pelican", "Romeo Health", and "Pharmagetics" (the "Brand Names").

20. In addition, the Websites are selling products that have the same appearance as the protected trademarks for Brainol, Bloodsyl, Hairprin, Anemiaprin, Fertilisyl, Bonesyl, Energysyl, Eyesyl, Hemovir, Liversyl, Prostarex, Caralluma MD, and Tinnitol, including using the same color patterns, fonts, and other imagery as contained on the product labels used by plaintiffs in the marketing and sale of plaintiffs' products.

21. Further, in all cases, the image of the product label and container on the Websites is nearly identical to plaintiffs' product containers for Brainol, Bloodsyl, Hairprin, Anemiaprin, Fertilisyl, Bonesyl, Energysyl, Eyesyl, Hemovir, Liversyl, Prostarex, Caralluma MD, and Tinnitol, except that the Brand Names have been added to the image of the product container and in some instances the color of the actual container under the label is different.

22. Upon information and belief, Defendants market and sell various products under the "Dr. Pelican", "Pharmagetics", "Romeo Health", and "MPD Health" names on the Websites, as well as other brand names. Many of these products appear to be additional cases of trademark infringement of other companies' products (other than plaintiffs), using the same methods alleged hereinabove.

23. The Websites do not disclose that the valid owners of the marks are either Approved Science or Idingo, and instead attempt to confuse and mislead consumers into believing the products and their marks are marketed and sold as products that are owned or controlled by Defendants.

24. Defendants' marketing and sale of their products with Plaintiffs' marks conspicuously displayed on the Websites intentionally creates the clear and false

impression that the products and their marks are owned or sold by Defendants, that Defendants have a valid license to market and sell the products or use plaintiffs' protected trademarks in the sale of their product, or simply that consumers are buying the same products that are owned and sold under the protected trademarked names of Brainol, Bloodsyl, Hairprin, Anemiaprin, Fertilisyl, Bonesyl, Energysyl, Eyesyl, Hemovir, Liversyl, Prostarex, Caralluma MD, or Tinnitol.

25. When a consumer searches for plaintiffs' products in a search engine such as Google, they are provided with search results, often on the first page of the results, that direct consumers to, inter alia, the Websites.

26. The Websites themselves intentionally contain false, misleading, and disparaging comments about Brainol, Bloodsyl, Hairprin, Anemiaprin, Fertilisyl, Bonesyl, Energysyl, Eyesyl, Hemovir, Liversyl, Prostarex, Caralluma MD, and Tinnitol.

27. Further, the infringing product(s) sold by Defendants on the Websites do not contain the same ingredients, ingredient amounts, and/or formulation as the products, leading consumers who purchase Defendants' counterfeit and infringing products to draw erroneous conclusions about the efficacy of the products after using the infringing product(s) sold by Defendants.

28. Upon information and belief, Defendants use plaintiffs' marks in HTML meta-tags, keywords and in other online marketing efforts so that when consumers looking to buy plaintiffs' products search for plaintiff's products in a search engine, consumers are directed to the Websites for the purposes of marketing and selling defendants' products that unlawfully contain plaintiffs' trademarked product name and

product image.

29. Defendants created the Websites with malice and the intent to harm plaintiffs and the sales of the products, while unlawfully and wrongfully attempting to endorse and sell defendants' infringing products for defendants' commercial gain, at plaintiffs' expense.

30. On May 22, 2025, counsel for plaintiffs sent Defendants letters by certified mail and regular U.S. Mail demanding that Defendants cease and desist from their wrongful and infringing conduct; however, Defendants did not respond to this letter and have **not** ceased their unlawful conduct, but continue such conduct to this day.

31. Upon information and belief, DOES 1-10 are individuals or entities affiliated with defendants, have control and responsibility for marketing, promotion, and sale of defendants' products and defendants' adoption and use of plaintiffs' marks, and personally and directly benefit from the activities complained of herein.

32. The Websites and their infringing products have decreased plaintiffs' sales of the products and have lowered plaintiffs' conversions, as a result of consumer confusion caused by defendants' conduct; and such decreased sales and lowered conversions are the natural and probable consequence of defendants' unlawful conduct described herein.

33. Defendants' actions have also caused, and will further cause, plaintiffs irreparable harm to their names and reputations and the names and reputations of their products for which money damages and legal remedies are inadequate.  Unless defendants are restrained and enjoined by this Court, defendants will *continue* and/or

expand their unlawful activities alleged hereinabove and otherwise *continue* to cause great and irreparable damage and injury to plaintiff by, among other things:

    a.    Depriving plaintiffs of their statutory and common-law right to use and control of the usage of their marks without disparagement and defamatory comments being made by defendants;

    b.    Creating a likelihood of confusion, mistake, and deception among consumers and the trade as to the source of plaintiffs' goods and defendants' goods;

    c.    Causing the public to falsely associate plaintiffs' products with defendants' products, or vice versa.

    d.    Causing the public to purchase the infringing products instead of plaintiffs' products based on defendants' counterfeit versions of plaintiffs' products and efforts to confuse consumers into believing they are buying plaintiffs' products.

    e.    Causing incalculable and irreparable damages to plaintiffs' goodwill and diluting the capacity of its marks to differentiate plaintiffs' goods from the goods of others; and

    f.    Causing plaintiffs to lose sales and profits from those sales.

### COUNT I – Trademark Infringement

34.    Plaintiffs hereby incorporate by reference the allegations in paragraphs 1 - 33 as if fully set forth herein.

35.    Plaintiffs' marks — Brainol, Bloodsyl, Hairprin, Anemiaprin, Fertilisyl, Bonesyl, Energysyl, Eyesyl, Hemovir, Liversyl, Prostarex, Caralluma MD, and Tinnitol —

are valid, protectable, well-known trademarks.

36. Plaintiffs' rights in their marks pre-date any use of the marks by defendants.

37. Plaintiffs, or their employees-for-hire, own all rights, title, interest, and goodwill associated with their marks.

38. At all times complained of herein, defendants were aware of plaintiffs' rights in their marks.

39. Defendants have used plaintiffs' marks in commerce without plaintiffs' knowledge or consent.

40. Defendants have used plaintiffs' marks in a manner calculated to capture initial consumer attention and to direct such attention to the Websites, in the promotion of defendants' competing products.

41. Defendants' use of plaintiffs' marks has been willful, deliberate, intended to benefit defendants at plaintiffs' expense, and made in bad faith.

42. Defendants' use of plaintiffs' marks is likely to cause confusion in violation of the Lanham Act, including but not limited to 15 U.S.C.§§1114 and 1125(a)(1)(A) & (B).

43. As a direct and proximate result of defendants' conduct, plaintiffs have suffered damages, including but not limited to the loss of goodwill and lost profits.

44. As a direct and proximate result of defendants' *continuing* conduct, damages constitute an inadequate legal remedy to prevent irreparable harm to plaintiffs; and plaintiffs are thereby entitled to injunctive relief to prevent such *continuing* conduct.

45. This is an exceptional case under 15 U.S.C.§1117(a) and plaintiffs are entitled to an award of attorneys' fees.

## COUNT II – False Advertising

46. Plaintiffs hereby incorporate by reference the allegations in paragraphs 1 - 45 as if fully set forth herein.

47. Defendants have made numerous false and misleading statements in the commercial advertising and promotion of the Websites and their products.

48. Defendants have caused their false and misleading statements to enter interstate commerce.

49. Defendants' statements have a tendency to deceive, and upon information and belief, have in fact deceived a substantial segment of its audience, including but not limited to plaintiffs' customers and prospective customers.

50. The deception caused by defendants' false statements is material in that it is likely to influence purchasing decisions.

51. Defendants' conduct has been willful, wanton, and reckless.

52. Plaintiffs have been injured and damaged as a result of defendants' statements, including but not limited to the loss of goodwill and lost profits.

53. As a direct and proximate result of defendants' *continuing* conduct, damages constitute an inadequate legal remedy to prevent irreparable harm to plaintiffs; and plaintiffs are thereby entitled to injunctive relief to prevent such *continuing* conduct.

54. Defendants' conduct is a violation of 15 U.S.C.§1125(a)(1)(B); and this is an exceptional case under 15 U.S.C.§1117(a) and plaintiffs are entitled to an award of attorneys' fees.

## COUNT III – Federal Unfair Competition

55. Plaintiffs hereby incorporate by reference the allegations in paragraphs 1 - 54 as if fully set forth herein.

56. Defendants' actions constitute unfair competition in violation of the Lanham Act, 15 U.S.C.§1125(a).

57. As a direct and proximate cause of defendants' conduct, plaintiffs have been damaged in amounts to be proven at trial, including but not limited to the loss of goodwill and lost profits.

58. At all material times, defendants have acted in bad faith, oppressively, and maliciously towards plaintiffs, with intent to injure plaintiffs, thereby entitling plaintiffs to treble damages against defendants in a further amount to be determined at trial.

59. As a direct and proximate result of defendants' *continuing* conduct, damages constitute an inadequate legal remedy to prevent irreparable harm to plaintiffs; and plaintiffs are thereby entitled to injunctive relief to prevent such *continuing* conduct.

60. This is an exceptional case under 15 U.S.C.§1117(a) and plaintiffs are entitled to an award of attorneys' fees.

### COUNT IV – Common Law Unfair Competition

61. Plaintiffs hereby incorporate by reference the allegations in paragraphs 1 - 60 as if fully set forth herein.

62. Defendants' actions, including but not limited to their use of the name(s) of plaintiffs' products and marks associated therewith, constitute unfair competition under the applicable common law of the states in which the parties operate, including but not limited to the state of Missouri.

63. Defendants have intentionally and knowingly engaged in the unlawful use of plaintiffs' trademarks, names, and goodwill. Without limitation, defendants' actions have caused, and in the future are likely to cause, confusion, mistake, and deception among consumers and the public as to the source and quality of plaintiffs' products, thereby causing loss, damage, and injury to plaintiffs and the public.

64. As a direct and proximate result of defendants' unfair competition, defendants have unjustly enriched themselves, and have received revenues and profits in an amount that plaintiffs will prove at trial. Accordingly, plaintiffs are entitled to restitution, as well as an accounting and disgorgement of any profits made by defendants.

65. As a direct and proximate result of defendants' unfair competition, plaintiffs have suffered and continue to suffer damages in such amounts that plaintiffs will prove at trial, including but not limited to the loss of goodwill and lost profits.

66. As a direct and proximate result of defendants' *continuing* conduct, damages constitute an inadequate legal remedy to prevent irreparable harm to plaintiffs; and plaintiffs are thereby entitled to injunctive relief to prevent such *continuing* conduct.

## COUNT V – Commercial Disparagement

67. Plaintiffs hereby incorporate by reference the allegations in paragraphs 1 - 66 as if fully set forth herein.

68. Defendants have intentionally published the foregoing false statements.

69. Defendants intended the publication of such false statements to result in pecuniary harm to plaintiff's business interests and defendants.

70. Defendants knew their statements were false or acted in reckless disregard

of their truth or falsity.

71. Defendants have exhibited a pattern or practice of using keyword triggering advertising to infringe upon, disparage, and unfairly compete with competitors in several markets, including plaintiffs'.

72. Defendants' statements were made in commerce and have caused injury to plaintiffs' reputation.

## COUNT VI – Defamation Per se and Trade Libel

73. Plaintiffs hereby incorporate by reference the allegations in paragraphs 1 - 72 as if fully set forth herein.

74. Defendants have published false representations concerning plaintiffs' products on the Websites and in their advertising, and the consumers viewing such false representations correctly, or mistakenly but reasonably, understood that such statements were intended to refer to plaintiffs and/or plaintiffs' products.

75. Defendants were at fault in making such statements.

76. Such statements tended to expose plaintiffs to contempt or ridicule or deprive plaintiffs of the benefit of public confidence.

77. Such statements were read by the public viewers of the Websites.

78. Plaintiffs' reputations were thereby damaged.

## COUNT VII – Tortious Interference with Business Relationships/Expectancies

79. Plaintiffs hereby incorporate by reference the allegations in paragraphs 1 - 78 as if fully set forth herein.

80. Multiple business relationships, and/or reasonable expectations of entering

into valid business relationships, existed between plaintiffs and their customers and prospective customers, which were breached or terminated by such customers and/or prospective customers.

81. Defendant had knowledge of such business relationships and expectations of plaintiffs.

82. Defendants caused such customers and prospective customers of plaintiffs to breach or terminate their relationships and/or expectancies with plaintiffs, and *continue* to cause the same.

83. Defendants did so intentionally and without justification or excuse and used unlawful means to do so, as alleged above with particularity.

84. Plaintiffs were thereby damaged and injured.

85. As a direct and proximate result of defendants' *continuing* conduct, damages constitute an inadequate legal remedy to prevent irreparable harm to plaintiffs; and plaintiffs are thereby entitled to injunctive relief to prevent such *continuing* conduct.

### COUNT VIII – Cybersquatting

86. Plaintiffs hereby incorporate by reference the allegations in paragraphs 1 - 85 as if fully set forth herein.

87. Plaintiffs' marks — Brainol, Bloodsyl, Hairprin, Anemiaprin, Fertilisyl, Bonesyl, Energysyl, Eyesyl, Hemovir, Liversyl, Prostarex, Caralluma MD, and Tinnitol, — are valid, protectable, well-known trademarks.

88. Plaintiffs' rights in their marks pre-date any use of the marks by defendants.

89. Plaintiffs, or their employees-for-hire, own all rights, title, interest, and

goodwill associated with their marks.

90. At all times complained of herein, defendants were aware of plaintiffs' rights in their marks.

91. The various domain addresses of some of the Websites owned or controlled by Defendants use the distinctive words Brainol, Bloodsyl, Hairprin, Anemiaprin, Fertilisyl, Bonesyl, Energysyl, Eyesyl, Hemovir, Liversyl, Prostarex, Caralluma MD, and Tinnitol, in the various URLs.

92. The use of Brainol, Bloodsyl, Hairprin, Anemiaprin, Fertilisyl, Bonesyl, Energysyl, Eyesyl, Hemovir, Liversyl, Prostarex, Caralluma MD, and Tinnitol, in Defendants domain names or addresses, are confusingly similar to plaintiff's protected trademarks for Brainol, Bloodsyl, Hairprin, Anemiaprin, Fertilisyl, Bonesyl, Energysyl, Eyesyl, Hemovir, Liversyl, Prostarex, Caralluma MD, and Tinnitol,

93. Defendants registered the domain name and URL address with a bad faith intent to profit from it.

94. Defendants registration of the domain name and URL address was intended to divert consumers from plaintiffs' online location to the Websites, which caused harm to the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the Websites.

95. Defendants' actions constitute cybersquatting, in violation of the Lanham Act, 15 U.S.C. § 1125(d).

96. As a direct and proximate cause of defendants' conduct, plaintiffs have

been damaged in amounts to be proven at trial, including but not limited to the loss of goodwill and lost profits.

97. As a direct and proximate result of defendants' *continuing* conduct, damages constitute an inadequate legal remedy to prevent irreparable harm to plaintiffs; and plaintiffs are thereby entitled to injunctive relief to prevent such *continuing* conduct.

98. This is an exceptional case under 15 U.S.C.§1117(a) and plaintiffs are entitled to an award of attorneys' fees.

Prayer for Relief

WHEREFORE, plaintiffs pray that this Court enter judgment against defendants as follows:

1. For a judgment finding that:

    a. Defendants have infringed plaintiffs' trademarks in violation of 15 U.S.C.§1125(a);

    b. Defendants have violated Section 43 of the Lanham Act, 15 U.S.C.§1125(a), as it relates to false advertising;

    c. Defendants have unfairly competed with plaintiff in violation of the Lanham Act, 15 U.S.C.§1125(a), *and* in violation of applicable state common law, including that of the state of Missouri;

    d. Defendants intentionally commercially disparaged and defamed plaintiffs, causing great damage to their reputation;

    e. Defendants have tortiously interfered with plaintiffs' business relationships and expectancies;

   f. In all instances, defendants have acted in bad faith, willfully, intentionally, and/or in malicious disregard of plaintiffs' lawfully protected rights.

2. That plaintiffs be awarded compensatory damages and lost profits, and/or restitution and disgorgement of profits made by defendants, in amounts to be determined at trial.

3. That plaintiffs be awarded punitive and/or exemplary damages in amounts to be determined at trial.

4. That plaintiffs be awarded their reasonable attorneys' fees and costs.

5. That plaintiffs be awarded treble damages.

6. That the Court enter judgment in favor of plaintiffs, granting equitable and injunctive relief over the activities complained of herein.

7. That the Court award pre-judgment and post-judgment interest to plaintiffs.

8. Such other and further relief as this Court deems just and proper.

<u>Demand for Jury Trial</u>

Plaintiffs demand a trial by jury on all claims and issues so triable.

UTHOFF, GRAEBER, BOBINETTE & BLANKE

By:  /s/ Paul L. Schmitz
Paul L. Schmitz, #66885MO
Richard B. Blanke, #28675MO
906 Olive Street, Ste. 300
St. Louis, MO 63101
Phone: (314) 621-9550
Facsimile: (314) 621-2697
E-Mail: pschmitz@ugbblaw.com
   rblanke@ugbblaw.com

*Attorneys for Plaintiffs*